50 CCPA
## Application of Joseph F. STEPHENS.
### Patent Appeal No. 6951.

United States Court of Customs and Patent Appeals.

March 20, 1963.

Henry L. Shenier, Shenier & O'Connor, New York City (Francis M. O'Connor, New York City), for appellant.

Clarence W. Moore, Washington, D. C. (J. F. Nakamura, Washington, D. C., of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Judges.

ALMOND, Judge.

Joseph F. Stephens, appellant, appeals from the decision of the Board of Appeals affirming the examiner's rejection of claims 7, 8 and 10, all of the claims in his application,[1] as unpatentable over the prior art.

The invention claimed resides in a method for making tubular pipe insulation which includes the following steps:

(I) Advancing a perforated mandrel axially toward a winding zone. (II) Winding a mat of insulating material impregnated with an uncured resin around the advancing mandrel to form a helical winding about the mandrel. (III) The helically wound mat is then encased in a pair of perforated mold members. (IV) The entire assembly is then passed through a curing oven so that hot air passes radially through the mat curing the resin to form a continuous length of insulation. The cured insulation is then cut into sections of desired length and slit longitudinally so that the finished product may be conveniently snapped over the pipe to be insulated without the aid of clamps or other means to hold the insulation securely to the pipe.

The references of record relied on are:

| | | |
|---|---|---|
| Collins | 2,723,705 | November 15, 1955. |
| Stephens et al. | 2,778,759 | January 22, 1957. |

The Collins patent discloses a method of making resin impregnated laminated glass fiber pipe which comprises the steps of advancing an imperforate mandrel in the direction of its axis, spirally wrapping sheets of glass fibers containing a resin coating and advancing the covered mandrel into a heating chamber to cure the resin. The patentee further teaches slitting the tube in the direction of its length by cutter means ei-

1. Serial No. 481,323, filed Jan. 12, 1955, for "Method of Producing Tubular Pipe Insulation."

ther before or after the curing operation, other cutting means serving to cut the continuous length of tubing transversely into suitable lengths.

The Stephens et al. patent discloses a method of making tubular pipe insulation comprising the steps of winding a glass fiber mat impregnated with synthetic resin on a perforated mandrel which is placed within a perforated mold. Hot gas from an oven is fed through the mandrel to cure the resin. A longitudinal slit is then cut along the cylinder of insulation which, as desired, may extend radially or at an angle.

Claim 10 is the basic claim upon which claims 7 and 8 are dependent. Claim 10 reads as follows:

"10. A method of making tubular pipe insulation including the steps of advancing a perforated mandrel axially toward a winding zone, winding a mat of insulating material impregnated with an uncured resin around said advancing mandrel at said winding zone to form a helical winding about the mandrel, encasing the helically wound mat with a pair of perforated mold members, and directing curing air radially through said encased assembly including said helically wound mat as said assembly passes through said curing zone to cure said impregnating resin to form a finished continuous length of insulation."

The board, in sustaining the examiner's rejection of the claims in issue as unpatentable over Collins in view of Stephens et al., asserted that there is no dispute regarding the actual teachings of the two patents.

The critical aspects of appellant's claimed invention, as disclosed by his specification, would seem to reside in the asserted novelty of his method of continuously producing tubular pipe insulation of any length without modification of the apparatus employed to accomplish the method.

In his brief and argument made before us, appellant's contentions are summarized as follows:

"Collins fails to show or suggest the manner in which the process of Stephens et al could be carried out to produce continuous lengths of insulating material.

\* \* \* \* \* \*

"Stephens et al do not suggest directing curing air radially through a traveling pervious assembly as it passes through a curing zone.

\* \* \* \* \* \*

"The only suggestion for aggregating the showings of Collins and Stephens et al in the manner proposed by the Board of Appeals arises from appellant's disclosure.

\* \* \* \* \* \*

"A process resulting from the aggregation of the showings of Collins and Stephens et al would not be the equivalent of appellant's process.

\* \* \* \* \* \*

"Appellant's continuous process for producing continuous lengths of tubular insulating material is inventive over the prior art discontinuous step-by-step process for producing tubes of predetermined, relatively short length."

It is apparent, as stated by the board, that the Stephens et al. patent does not disclose a continuous tubular production by spiral winding upon an advancing mandrel and that Collins does not disclose passing curing air radially through the composite assembly including a perforated mandrel and perforated mold members. The rejections were predicated on a combination of the references. Treating Collins as the basic reference, the question occurs as to whether the noted omitted features of Collins would have been suggested to one of ordinary skill in the art, realizing the advantages of air flow curing from Stephens et al., to adopt the latter's perforated mandrel and perforated mold members.

We shall undertake to answer this inquiry as we proceed to discuss other salient and relevant features of the claimed invention in the light of the combination of the cited references.

It is apparent from the record that the concept of the production of the described insulation is not novel with the appellant. Stephens et al. discloses the making of insulation by winding fibrous material, impregnated with an uncured resin, around a mandrel. The material after winding is encased in perforated mold sections and treated through the application of heated gases through the interior of the perforated mandrel to cure the resin followed by slitting the product longitudinally.

In addition to features already noted, and observed by the board, claim 10 distinguishes over Stephens et al. in specifying a helical winding around the mandrel and that the resin be cured as the helically wound mat is advanced through a curing zone. As hereinabove noted, the Collins patent discloses a resin coated ribbon of fibers helically wound around an advancing mandrel which mandrel so wrapped is advanced through a heating chamber curing the resin, thus forming a reinforced plastic tubing. The Stephens et al. mandrel is hollow and both the mandrel and the mold are perforated. The fiber formed mat is sheared while in its green or uncured stage.

We perceive no reason, and the record discloses no evidence to the contrary, why it would not be obvious to one skilled in the art to adopt the perforated mandrel of Stephens et al. for *unsheared* mats by the process of Collins in which the mandrel advances towards a winding means to form a helical winding around the mandrel and the resin is cured by passing the helically wrapped mandrel through a curing zone.

We are unable to agree with appellant that Collins fails to show or suggest the manner in which the process of Stephens et al. could be carried out to produce continuous lengths of insulating material.

Collins claims and discloses a "continuous method of making reinforced laminates," and would seem to clearly suggest similarly producing tubular insulation on a continuous basis. The fact that Collins uses cellophane and continuous glass filament layers applied to an impervious mandrel and cures the resin by baking the assembly in a heating chamber would seem to be of no vital moment in derogation of the efficacy of combining the teachings of both the Collins and Stephens et al. patents. Basically, both patents disclose the objective of forming a tube from glass fibers impregnated with uncured resin through winding the strip around a mandrel and curing the resin by heating the strip on the mandrel. It would appear obvious to one of ordinary skill in the art that continuous production of the Stephens et al. tubular insulation might readily be accomplished by utilizing the feeding and winding means of Collins instead of the winding means disclosed by Stephens et al.

In support of his contention that a "process resulting from the aggregation of the showings of Collins and Stephens et al. would not be the equivalent" of his process, appellant argues that Collins would suggest no more than a spiral winding of the Stephens et al. "resin impregnated fibrous mat applied to an impervious mandrel which, after being wound, would pass through the heating chamber in which the assembly would be baked until the resin was cured." In this connection, appellant is apparently unmindful of the specific teachings of Stephens et al. that "The curing can take place in any appropriate oven, but the curing step will then take much longer. *With our perforated mandrel and mold* we can cure a phenol formaldehyde binder in approximately five minutes with a hot gas * * *" fed into the mandrel. (Emphasis ours.) In lieu of using the impervious mandrel and heating chamber of Collins, Stephens et al. clearly suggests utilizing the perforated mandrel and mold and the curing process of directing hot gas into the

mandrel and radially through the wound mat. It would seem to be a natural and reasonable deduction that one desiring continuous production of tubular insulation would be more than likely to retain features which Stephens et al. teaches to be highly desirable.

In support of the contention that Stephens et al. does not suggest passing air radially through a traveling pervious assembly as it proceeds through a curing zone, appellant points out that the patentees teach closing one end of the mandrel while hot air is blown into the other end. We find merit in the argument of the solicitor that "One skilled in the art would recognize * * * that rapid curing of the resin, as taught by Stephens et al., is an advantage due to radial passage of curing air through the wound mat. If one end of a continuously advancing mandrel cannot effectively be closed, it would seem to be an obvious expedient to retain that advantage by passing the curing air radially through the wound mat in the reverse direction from the outside to the inside of the wound mat." We, however, perceive no practical impediment or unobvious result either in the adoption of the Solicitor's suggestion or in closing one end of a continuously advancing mandrel.

Claim 7 adds to claim 10 the step of cutting the continuous length of insulation into predetermined lengths. This step is disclosed by both Stephens et al. and Collins.

Claim 8 adds to claim 10 the steps of slitting the tubing axially and stripping the slit length from the mandrel. Collins teaches the slitting of the tube in the direction of its length "as the mandrel is advanced along its path of travel." The tubular insulation of Stephens et al. requires an axial slit. Collins, therefore, would seem to suggest, as a step in a method of producing insulation in a continuous length, the slitting of the insulation on the mandrel as the mandrel is advanced.

Stephens et al. teaches that during the "removing step or after, a longitudinal slit is cut along the cylinder of insulation," which permits removal of the insulation from the mandrel.

We have not been unmindful of the cases cited to sustain principles as stated by the appellant. These cases are apposite to the factual situations to which they relate but are readily distinguishable in consideration of the facts presented by the matter before us. The suggestion to combine the references in the instant case is found in the references themselves and in no wise emanates as "hindsight" from appellant's disclosure. The teachings of the prior art cited and relied on in combination are convincing that appellant's claimed invention would have been obvious to a person of ordinary skill in the art at the time the invention was made.

We are constrained to agree with the conclusion of the board that:

"In essence, appellant is merely utilizing, in an obvious way, the desirable features of the cited art. Thus, we believe that a technician of ordinary skill, desiring to carry out the process of Stephens et al. in a continuous manner, would turn to a process such as that of Collins, showing the continuous production of a tubular article by spiral winding on an advancing mandrel. Conversely, we believe that the ordinary skilled operator of the Collins process, realizing the advantages of airflow curing from the Stephens et al. patent (column 6, lines 1 to 6) would readily adopt the perforated mandrel and perforated mold members of Stephens et al."

For the reasons stated, we affirm the decision of the Board of Appeals.

Affirmed.